

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RANDALL TODD ROYER,

    Petitioner,

    v.

ERIC D. WILSON,

    Respondent.

Civ. No. 1:14CV801 LMB/IDD

## PETITION FOR WRIT OF HABEAS CORPUS

### I.   Introduction

This is a petition for writ of habeas corpus pursuant to 28
U.S.C. § 2241. Petitioner is a federal prisoner in the custody of
Respondent within the territorial jurisdiction of the U.S.
District Court for the Eastern District of Virginia. In 2004
Petitioner pleaded guilty in this district to one count of aiding
and abetting the use of a firearm during and in relation to a
crime of violence, in violation of 28 U.S.C. § 924(c), and one
count of aiding and abetting the carrying of an explosive during
the commission of a felony, in violation of 18 U.S.C. § 844(h).
He was sentenced to consecutive ten-year prison terms on each
count.

In the instant petition, Petitioner argues that his § 924(c)
conviction should be vacated because a recent change in Fourth
Circuit Court of Appeals law has rendered the conduct at issue in
that conviction non-criminal. Specifically, Petitioner argues
that under this new precedent, the methodology for determining
whether an offense is a "crime of violence" has changed,
disqualifying the statute underlying the § 924(c) conviction from

serving as a predicate and eliminating an essential element of the offense. Petitioner further argues that § 2241 is the appropriate vehicle for this claim because the change in law occurred subsequent to the filing of his § 2255 motion, depriving him of the chance to raise the issue in his first collateral attack on his conviction. Petitioner asks the court to vacate his § 924(c) conviction and order his immediate release from custody.

## II. Jurisdiction and Venue

This court has subject matter jurisdiction over this petition under 28 U.S.C. §§ 1331 (federal question), 2241 (habeas corpus), and 2255(e) (savings clause). Venue is proper in this court under § 2241(a) because Petitioner is in custody at the Federal Correctional Complex in Petersburg, Virginia, which is located in this district. The court has personal jurisdiction over Respondent under § 2241(a) because he is the warden of FCC Petersburg.

## III. Statement of Facts

On June 25, 2003, Petitioner and ten other individuals were charged with 41 counts, including conspiracy under 18 U.S.C. § 371, violation of the Neutrality Act, 18 U.S.C. § 960, and use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c).

In October 2003, Petitioner, through counsel, filed a motion to dismiss the indictment. Petitioner argued, inter alia, that the Neutrality Act could not serve as a predicate offense for the § 924(c) charges since it did not qualify as a crime of violence under that statute's definition of the term; hence, Petitioner argued, any § 924(c) counts tied to the Neutrality Act had to be

2

dismissed. See Ex. A (Motion to Dismiss of October 2003).

In December 2003 the court issued a memorandum opinion
denying the motion to dismiss. As to the crime of violence
argument, the court wrote that "[o]nce all the evidence has been
developed at trial, we will reconsider whether the Government has
established the necessary predicate offense." Ex. B (Memorandum
Opinion of December 2003).

Less than three weeks after the denial of that motion,
Petitioner pleaded guilty to a two-count criminal information.
Count One of the information, the only count at issue in this
petition,[1] charged that Petitioner "aid[ed] and abet[ted] the use
and discharge of a semi-automatic pistol by [four codefendants]
...during and in relation to...the conspiracy charged in Count
One of the Indictment..." Count One of the superseding indictment
to which the information refers, charged a conspiracy to commit
five offenses, one of which was the Neutrality Act. Petitioner
limited his admission of guilt to the Neutrality Act object of
the conspiracy count. See Ex. C (Memorandum Opinion of February
15, 2012, Cr. No. 1:03cr296 (LMB) at 14, n.7). In April 2004
Petitioner was sentenced to the mandatory minimum sentence of ten
years in prison for each count of the information, to run
concurrently, for an aggregate sentence of twenty years in prison.
Petitioner did not appeal his conviction or sentence.

In March 2009 Petitioner filed his first and only § 2255
motion, asserting that the § 924(c) charge should be vacated on

---

[1] Petitioner does not challenge Count Two of the information
because the statute at issue requires only that the predicate
offense be a "felony," not a crime of violence. See § 844(h).

the ground that the principals used the firearm in relation to a
different object of the conspiracy than that intended by
Petitioner, i.e., the Neutrality Act. The court denied the
motion, finding that at least one of the individuals did in fact
discharge the pistol in relation to the Neutrality Act conspiracy.
Petitioner did not appeal the denial of his motion.

Petitioner now files the instant petition for writ of habeas
corpus pursuant to 28 U.S.C. § 2241. At issue in this petition is
Count One of the information.

## IV. Claim for Relief

Petitioner's claim is that, because a predicate crime of
violence is an essential element of a conviction under 18 U.S.C.
§ 924(c), and because the Neutrality Act, the predicate offense
underlying Count One, is not a crime of violence following a
recent change in circuit law, his conviction on Count One must be
vacated.

### A. Legal Standards

#### 1. § 924(c) and "Crimes of Violence"

"In order to prove a violation of § 924(c)(1), the
Government must show two elements: (1) the defendant used or
carried a firearm; and (2) the defendant did so during and in
relation to...a crime of violence." United States v. Mitchell,
104 F.3d 649, 652 (4th Cir. 1997). A crime of violence is an
essential element of § 924(c). United States v. Rodriguez-Moreno,
526 U.S. 275, 280 (1999). See also United States v. Randall, 171
F.3d 195, 205 (4th Cir. 1998)("[P]roof of a predicate offense is
an essential element of a § 924(c) violation"); United States v.
Abdulmutallib, 739 F.3d 891, 905 n.5 (6th Cir. 2014)("Section

4

924(c)...must be tied to a crime of violence...").

An offense is a predicate crime of violence under § 924(c)
if it is a felony that, "by its nature, involves a substantial
risk that physical force against the person or property of
another may be used in the course of committing the offense..."
18 U.S.C. § 924(c)(3)(B).[2] That section "tracks identical language
contained in 18 U.S.C. § 16(b)." United States v. Serafin, 562 F.
3d 1105, 1108 (10th Cir. 2009). See also United States v. Acosta,
470 F.3d 132, 134 (2d Cir. 2006)(§ 16 "contains virtually
identical language to § 924(c)(3)"); United States v. Williams,
343 F.3d 423, 431 n.2 (5th Cir. 2003)("Section 924(c)(3) is
materially identical" to § 16); Evans v. Zych, 644 F.3d 447, 452
(6th Cir. 2011)(same). "The Supreme Court has yet to interpret
the crime of violence language in § 924(c)(3)(B) but it has
interpreted the language in § 16(b)." Serafin, 562 F.3d at 1108
(citing Leocal v. Ashcroft, 543 U.S. 1 (2004)). See also United
States v. Butler, 496 Fed. App'x 158, 161 n.4 (3d Cir. 2012)
("[C]aselaw interpreting § 16 thus properly guides our analysis"
of § 924(c)(3)).

Section 16(b) defines "a category of violent, active crimes
..." Johnson v. United States, 176 L.Ed. 2d 1,9 (2010)(quoting
Leocal, 543 U.S. at 11). The "substantial risk" referred to in §
16(b) "relates not to the general conduct or to the possibility
that harm will result from a person's conduct , but to the risk

---

[2] Additionally, § 924(c)(3)(A) defines a crime of violence
as a felony that "has as an element the use, attempted use, or
threatened use of force..."As the Neutrality Act has no such
element, Petitioner focuses on § 924(C)(3)(B).

that the use of physical force against another might be required
in committing a crime." Leocal, 543 U.S. at 10. The Court in
Leocal "repeatedly emphasized the importance of the requirement
that the force will be used in committing the offense." United
States v. Hull, 456 F.3d 133, 139 (3d Cir. 2006)(emphasis in
original). "This element of § 16(b) is perhaps the most
important." Id. Thus the Fourth Circuit is "of opinion that 18
U.S.C. § 16(b) requires that the substantial risk involved be a
substantial risk that force will be employed as a means to an end
in the commission of the crime..." Garcia v. Gonzalez, 455 F.3d
465, 469 (4th Cir. 2006)(emphasis supplied). See also United
States v. Diaz, 327 F.3d 410, 413-14 (5th Cir. 2003)(§ 16(b)
offense "must present the substantial liklihood that the offender
will intentionally employ force...in order to effectuate the
commission of the offense"); Evans v. Zych, 644 F.3d at 453 ("A
simple correlation between the crime of conviction and the
possibility of future violence is insufficient; there must be a
risk that force is used in commission of the criminal act").

Moreover, a felony is not a § 16(b) crime of violence
"unless its commission invariably presents a substantial risk of
the intentional use of force." Vargas-Sarmiento v. United States
DOJ, 448 F.3d 159, 172 (2d Cir. 2006)(citing Jobson v. Ashcroft,
326 F.3d 367, 374 (2d Cir. 2003)("reject[ing] the government's
argument that an offense satisfies section 16(b) as long as many
(but not all) convictions involve a substantial risk of the use
of force")).

   2.   Categorical Approach

   Courts analyze § 16(b), and thus § 924(c)(3)(B), under the

6

categorical approach. <u>Garcia v. Gonzalez</u>, 455 F.3d at 468 (4th Cir. 2006).[3] This approach "looks only to the fact of conviction and the definition of the ⌊predicate⌋ offense to determine whether the conduct criminalized, including the most innocent conduct, qualifies as a crime of violence." <u>United States v. Montes-Flores</u>, 736 F.3d 357, 369 (4th Cir. 2013). The categorical approach "focuses on the <u>elements</u> of the...offense rather than on the <u>conduct</u> underlying the conviction." <u>United States v. Cabrera-Umanzor</u>, 728 F.3d 357, 369 (4th Cir. 2013); <u>Leocal</u>, 543 U.S. at 7 (§ 16(b) "requires us to look at the elements and nature of the

---

[3] Courts "apply the categorical approach in a variety of sentencing contexts." <u>United States v. Piccolo</u>, 441 F.3d 1084, 1086 (9th Cir. 2013); <u>United States v. Aparicio-Soria</u>, 721 F.3d 317, 322 (4th Cir. 2013), <u>vacated</u> 740 F.3d 152 (4th Cir. 2014)(en banc)("⌊T⌋his Court has thus employed the categorical approach in various force and residual clause contexts"). These contexts include 18 U.S.C. §§ 16, 924(C)(3), and 924(e)(2)(B)(the Armed Career Criminal Act ("ACCA")), and United States Sentencing Guidelines §§ 2L1.2 (the reentry guideline) and 4B1.2 (the career offender guideline). Some of these provisions' definitions of crime of violence are identical and others differ by degrees. Depending on their similarity, decisions interpreting one provision may or may not "be pertinent to the ultimate issue" of whether an offense is a crime of violence under another provision. <u>United States v. Hemingway</u>, 734 F.3d 323, 337 n.13 (4th Cir. 2013). Nevertheless, those decisions "may provide useful guidance, particularly with respect to the question of whether and how" to apply the categorical approach. <u>Id.</u> <u>See, e.g.</u>, <u>United States v. Fish</u>, 2014 U.S. App. LEXIS 3696 (1st Cir. 2014)(relying on cases construing ACCA to interpret § 16(b)); <u>United States v. Daye</u>, 571 F.3d 225, 233 n. 9 (2d Cir. 2008)(finding "our previous analysis of § 16(b) to be helpful" in interpreting ACCA); <u>Aguilar v. AG of the United States</u>, 663 F.3d 692, 704 (3d Cir. 2011)(relying on <u>Begay</u>, interpreting ACCA, to interpret § 16(b)); <u>Karimi v. Holder</u>, 715 F.3d 561, 566 n. 5 (4th Cir. 2013)(noting that Supreme Court has relied on cases construing § 16(b) to construe ACCA); <u>United States v. Sanchez-Ledezma</u>, 630 F.3d 447, 450-51 (5th Cir. 2011) (relying on <u>Begay</u> to interpret § 16(b)); <u>Nguyen v. Holder</u>, 571 F.3d 524 (6th Cir. 2009)(same); <u>Jiminez-Gonzalez v. Mukasey</u>, 548 F.3d 557, 562 (7th Cir. 2008)(same); <u>Rodriguez-Castellon v. Holder</u>, 733 F.3d 847, 858 n. 7 (9th Cir. 2013)(USSG § 4B1.2 cases may be used to construe § 16(b)); <u>United States v. Coronado-Cervantes</u>, 154 F.3d 1242, 1243 (10th Cir. 1998)(same).

offense of conviction, rather than to the particular facts relating to petitioner's crime"). "[T]he 'key' is 'elements, not facts.'" United States v. Aparicio, 740 F.3d 152, 158 (4th Cir. 2014 (en banc)(citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013).

A predicate offense is not a categorical crime of violence when "the full range of conduct covered by the...statute does not fall within" the definition of crime of violence. United States v. Torres-Miguel, 701 F.3d 165  171 (4th Cir. 2012)(citation and internal quotation marks omitted). In determining what conduct is covered by the statute, courts may not "'hypothesize' about 'unusual cases.'" United States v. Carthorne, 726 F.3d 503, 514 (4th Cir. 2013)(citing James v. United States, 550 U.S. 192, 207- 208 (2007). Rather, courts examine the statute's plain meaning, see, e.g., Torres Miguel at 168-69 (analysing statute's elements to find it did not meet the Guidelines definition of crime of violence), or look to caselaw applying or interpreting the offense. See Carthorne at 513-15 (relying on state court holdings that offense could be accomplished "without physical injury" to conclude it was not a crime of violence under U.S.S.G. § 4B1.2); Aparicio-Soria, 740 F.3d at 157-58 (offense was not a crime of violence under U.S.S.G. § 2L1.2 where state's highest court had held that its elements encompassed non-violent physical contact); Hemingway, 734 F.3d at 337-38 (offense was not an ACCA crime of violence where state courts had held it could be committed without risk of physical injury); United States v. Vann, 660 F.3d 771, 785 (4th Cir. 2011)(en banc)(King, J., concurring)(same); United States v. Fish, 2014 U.S. App. LEXIS 3696 (1st Cir. 2014)

(consulting "actual cases on the ground" to find that offense could be committed non-violently and was thus not a crime of violence under § 16(b)).

In summary, if the elements of an offense encompass any conduct that does not invariably involve a substantial risk that physical force will be used as a means to an end in the commission of the crime, it is not a categorical crime of violence under § 924(c) and cannot support a conviction under that statute.

B. The Neutrality Act Is Not a Categorical Crime of Violence Under § 924(c)

Title 18 U.S.C. § 960, the Neutrality Act, provides:

Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or domain of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined under this title, or imprisoned not more than three years, or both.

18 U.S.C. § 960. This offense is not a categorical crime of violence under § 924(c)(3)(B) because a "military enterprise" may be accomplished with conduct that does not invariably involve a substantial risk that force will be used as a means to an end in the commission of the offense. This is evident from the language of the statute and from cases interpreting and applying it.

To begin with, the term "military" is not synonomous with "violent." "In interpreting statutory language, words are generally given their common and ordinary meaning." National Coal. for Students With Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 288 (4th Cir. 1998)(quotation marks omitted). "Military" means "of or relating to armed forces." Black's Law

9

Dictionary (9th Ed. 2009). It is beyond question that one may perform various functions in the military or armed forces without the chance of ever seeing combat. Indeed, United States law has defined military service as including noncombatant roles such as "service in any unit of the armed forces which is unarmed at all times," "service in the medical department of any of the armed forces," and "any other assignment the primary function of which does not require the use of arms in combat..." Ex. Or. No. 10028, effective Jan. 14, 1949, 14 Fed. Reg. 211. Notwithstanding their noncombatant functions, such servicemembers are still "subject to military discipline [and] court martial" and wear uniforms of the armed forces. 10 U.S.C. § 1101(a)(25). See also 38 C.F.R. § 3.7 (identifying "[i]ndividuals and groups considered to have performed active military, naval, or air service" as including surgeons, nurses, members of the Public Health Service, those involved in aerial transportation of the mail, clerks, etc.).

As for the terms "military expedition" and "military enterprise" in the Neutrality Act, the Supreme Court has defined them as follows:

[A] military expedition is a journey or voyage by a company, or body of persons, having the position or character of soldiers, for a specific warlike purpose...

Wiborg v. United States, 163 U.S. 632, 650 (1896), whereas "a military enterprise is a martial undertaking, involving the idea of a bold, arduous, and hazardous attempt." Id. "Martial" means "[o]f, relating to, or like war," but also "[r]elating to or connected with the armed forces or the military profession." Webster's New College Dictionary (3d Ed. 2008). Crucially,

[t]he word "enterprise" is somewhat broader than the word

10

> "expedition," and although the words are synonomously used
> it would seem that under the rule that its every word should
> be presumed to have some force and effect, the word
> "enterprise" was employed to give a <u>slightly</u> <u>wider</u> <u>scope</u> to
> the statute.

<u>Id.</u> (emphasis supplied). The Court then quoted approvingly a
district court's distinction between these two terms:

> The term "expedition" is used to signify a march or voyage
> with martial or hostile intentions," [whereas] [t]he term
> "enterprise" means an undertaking of hazard, an arduous
> attempt.

<u>Id.</u>

This distinction between "expedition" and "enterprise"
explained in <u>Wiborg</u> was applied in the case of <u>United States v.</u>
<u>Sander</u>, 241 F. 417 (S.D.N.Y. 1917) to facts involving defendants
alleged to have sent a spy to the United Kingdom in order to aid
Germany. Two of the defendants engaged a third to travel to
England and pose as a newspaper correspondent while secretly
sending letters "from time to time" to contacts in Holland -- to
be forwarded to German military authorities -- describing the
effects of Germany's military embargo on the English population.
<u>Id.</u> at 417-19. The defendants moved to dismiss the indictment on
the ground that the facts alleged did not "come within the
prohibition" of the Neutrality Act. <u>Id.</u> at 417.

The trial judge, respected jurist and future circuit court
judge August N. Hand, rejected that contention. He distinguished
the case before him from those cases that had held that "the
expedition or enterprise aimed at by this statute must be of a
substantial military character," consisting of men resembling
soldiers with "discipline, arms, and concert of action." <u>Id.</u> Such
cases "all relate...to the portion of the statute which deals with

11

a military expedition. This feature of the statute is distinguished from the language prohibiting a military enterprise..." Id. (citing Wiborg). The test for a military enterprise, the court held, was: Can the defendant's actions "fairly be considered as an accompaniment of military operations, so intimately connected with them that [they] form[] a natural, if not inevitable, part of such operations?" Id. at 420.

Applying that test to the facts of the case, the court found that the indictment sufficiently alleged the existence of a military enterprise. "[N]o one can dispute that spies are, and from time immemorial have been, essential accompaniments of armies and military expeditions and enterprises of all kinds." Id. The judge was careful to add that he did not intend "to say that a person is not within the inhibitions of the act who is not within the precise category of soldier or spy." Id. The term "military enterprise," he emphasized, "ha[s] been held by the Supreme Court to give a wider scope to the statute" than the term "military expedition," and "may consequently include various undertakings by single individuals, as well as a number of persons." Id.

Hence, it is clear from Wiborg and Sander that the Neutrality Act's prohibitions are not limited to expeditions "of a substantial military character" made up of men bent on engaging in combat. Rather, the statute's reach extends even to "various undertakings" by individuals who engage within this country to serve on behalf of a foreign country's armed forces in a war with respect to which the United States is neutral, even when those individuals serve in noncombatant capacities. For while spies and other noncombatant servicemembers may not be a part of

12

military operations, they are "essential accompaniments" of the armed forces and "form[] a natural, if not inevitable, part" of their activities. And because noncombatant service is an essential, natural, and inevitable accompaniment of the armed forces, it poses the same threat to United States neutrality and foreign relations as that posed by "expedition[s]...of a substantial military character," and is thus prohibited by the statute. This holding reflects the commonsense recognition that not all functions inherent to the armed forces involve combat -- the same notion reflected in other U.S. laws recognizing the legitimacy and importance of noncombatant service to the armed forces.

Serving as a spy or a surgeon on behalf of a foreign nation's military might violate the Neutrality Act, but it cannot plausibly be said to involve a substantial risk that the offender will use force as a means toward performing those functions. Without resort to fanciful scenarios, there is no real argument to be made that the defendant in Sander risked using force as he sojourned in England in the guise of a journalist and wrote letters "from time to time" to people in Holland. And yet that conduct, and any other noncombatant service that supports or accompanies a foreign military, "comes within the prohibition" of the statute.

Accordingly, because the full range of conduct covered by the Neutrality Act does not fall within § 924(c)'s ambit, the offense is not a categorical crime of violence under that statute.

C.    Petitioner's § 924(c) Conviction Cannot Stand

Because a predicate crime of violence is an essential element of a § 924(c) conviction, and because the Neutrality Act is not a

13

categorical crime of violence under that statute, Petitioner is
serving a sentence for conduct that is not criminal. His
conviction on Count One of the information must therefore be
vacated. See Serafin, 562 F.3d at 1115-16 (reversing § 924(c)
conviction because predicate offense did not qualify as a crime of
violence under that statute); United States v. Canon, 993 F2d 1439,
1441 (9th Cir. 1993)(same); United States v. Cruz, 805 F2d 1464,
1475 (11th Cir. 1987)(same); United States v. Meyer, 803 F.2d 246,
248-49 (6th Cir. 1986)(same); United States v. Diaz, 778 F.2d 86
(2d Cir. 1986)(same); United States v. Barnett, 426 F. Supp. 2d
898 (N.D. Iowa 2006)(granting motion to withdraw guilty plea to §
924(c) charge because predicate offense was not a crime of violence
under § 924(c)(3)(B)); United States v. Mann, 2013 U.S. Dist.
LEXIS 164928 (D.N.M. Nov. 7, 2013)(granting motion to arrest
because court clearly erred in instructing jury that manslaughter
was a crime of violence under § 924(c)(3)(B)).

Moreover, because Petitioner has already served eleven years
of an aggregate twenty year prison sentence, vacature of the §
924(c) conviction and accompanying ten-year sentence requires his
immediate release from custody.

D.    28 U.S.C. § 2241 Is the Proper Vehicle For this Claim

"[I]t is well established that defendants convicted in
federal court are obliged to seek habeas relief from their
convictions and sentences through § 2255." Rice v. Rivera, 617
F.3d 802, 807 (4th Cir. 2010). However, "when § 2255 proves
inadequate or ineffective to test the legality of detention...a
federal prisoner may pursue habeas relief under § 2241." Id.
(citation and internal quotation marks omitted).

14

The Fourth Circuit has delineated the circumstances in which § 2255 is inadequate and ineffective and § 2241 may be used to pursue a habeas claim. In re Jones, 226 F.3d 328, 330(4th Cir. 2000). Those circumstances are:

> (1) at the time of conviction, settled law of this circuit or of the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

Id. at 333-34. In other words, "under the Jones rule, a federal prisoner is entitled to pursue a § 2241 motion only when he had no opportunity to utilize a § 2255 motion to take advantage of a change in the applicable law." Rice at 807.

As demonstrated below, Petitioner meets each of the Jones conditions and is therefore entitled to pursue his claim in a § 2241 motion.

### 1. Petitioner's conviction was initially legal

In his pretrial motion to dismiss the indictment filed in 2003, Petitioner argued that

> [b]ecause a violation of the Neutrality Act does not involve an element of physical force and no substantial risk of such force during the commission of the offense, it cannot be considered as a crime of violence under § 924(c).

Ex. A. Therefore, he concluded, any § 924(c) charges predicated on the Neutrality Act had to be dismissed. Id.

The district court denied the motion in a December 2003 memorandum opinion, writing:

> Defendants...dispute whether some of the substantive and conspiracy counts in the indictment qualify as crimes of violence, as defined by 18 U.S.C. § 924(c)(3).
>
> Whether the underlying crimes of violence can be

15

established by the government cannot be determined at this point. Once all the evidence has been developed at trial, we will reconsider whether the Government has established the necessary predicate offenses.

Ex. B.

Petitioner pleaded guilty in January 2004, but five of his codefendants proceeded to trial. It is unclear to Petitioner whether they renewed the crime of violence argument, but in a memorandum opinion explaining the verdicts reached at the bench trial, the district court

f[ou]nd that...conspirac[y] to violate the Neutrality Act [is a] crim[e] of violence as defined by 18 U.S.C. § 924(c)(3)...The predicate crime[ ] clearly fit[s] within this definition.

United States v. Khan, 309 F. Supp. 2d 789, 823 (E.D. Va. 2004). The defendants did not challenge this ruling on appeal. See United States v. Khan, 461 F 3d 477 (4th Cir, 2006).

In explaining its denial of Petitioner's motion to dismiss the indictment with reference to the need for trial evidence, the district court's premise appears to have been that the question of whether the Neutrality Act was a crime of violence turned on Petitioner's specific conduct. If so, the court was mistaken in resting its holding on that ground, even in 2003. See United States v. Aragon, 983 F 2d 1306, 1311-13 (4th Cir. 1993)(holding that § 16(b) must be analyzed under the categorical approach). But regardless of whether the court's ruling was the result of a categorical or fact-based approach, it was correct under Fourth Circuit precedent at the time. That is because, even though the Neutrality Act may be violated with conduct that falls outside § 924(d(3)(B)'s definition of crime of violence, that was not

16

dispositive in 2003. Rather, circuit law at the time held that

> in determining whether a particular offense, which may be
> committed in both violent and non-violent ways, is a crime
> of violence, "most" of the instances of the offense should
> present a serious risk of physical injury in order to be a
> crime of violence.

United States v. Pierce, 278 F.3d 282, 289 (4th Cir. 2002),

(citations removed).[4] In conducting this inquiry, courts were to

review reported cases to make an empirical determination as to

whether "most" reported cases involved a risk of violence. Id.

See also United States v. Johnson, 246 F 3d 330, 333 (4th Cir.

2001)("To constitute a crime of violence in the abstract, most,

if not all, instances of an offense should involve a serious risk

of potential injury"); United States v. Martin, 215 F.3d 470, 475

(4th Cir 2000)(same); United States v. Aragon, 983 F.2d at 1315

(determining that offense was § 16(b) crime of violence "by

looking to reported cases involving the offense," and finding

that, while "one could effectuate [the offense] without the use

of physical force, the majority of cases have involved the use of

physical force..."); United States v. Thompson, 891 F.2d 507,

509-10 (4th Cir. 1989)(conclusion that offense was § 16(b) crime

of violence "is verified by reported South Carolina cases

involving this offense and by cases from other states concerning

analogous firearms offenses...").

The claim that the Neutrality Act is not a crime of violence

-----

[4] The reference to "serious risk of injury" in Pierce
reflects the crime of violence provision at issue in that case,
USSG § 4B1.2, which is different (and narrower, see Leocal, 543
U.S. at 10, n.7) than § 16(b). That is immaterial because the
"most cases" analysis was part of the categorical approach and
applied to any crime of violence provision, including § 16(b).

would have failed the "most cases" test because even though some conduct prohibited by the statute falls outside of § 924(c)(3)(B)'s ambit, most cases involve at least the risk of the use of force. Indeed, Petitioner has collected what he believes to be every reported Neutrality Act case, see Appendix, and it appears that every case apart from Sander arguably dealt with conduct that involved either the use of force or a risk that force would be used -- which is expected, given that the military enterprise language prohibits conduct that is clearly at the margin of the statute's reach. Hence, under Pierce, Aragon, and the other cited Fourth Circuit decisions, the district court was correct in its holding, regardless of how it arrived at it: the Neutrality Act qualified as a categorical crime of violence in 2003-2004 and Petitioner's conviction was therefore legal at the time it was entered. His claim meets the first Jones condition.

> (2) Subsequent to Petitioner's conviction and § 2255 motion, circuit law changed such that his conviction is no longer legal.

Petitioner filed his § 2255 motion in March 2009, but he did not raise therein the argument that the Neutrality Act was not a crime of violence. Such an argument would have been rejected because the "most cases" approach of Pierce, Aragon, etc., was still good law, and the Fourth Circuit did not explicitly abandon it until 2014.

The evolution of the law concerning this issue proceeded as follows. In a series of cases, beginning with Pierce, circuit judges expressed dissatisfaction with the "most cases" test in dissenting and concurring opinions. In his dissent in Pierce,

18

Judge Gregory opined that

> [t]he majority's statement that the offense is a crime of
> violence if "most" of the instances of the offense present a
> serious risk of injury is a non sequitor. In order for an
> offense to present a serious risk of injury by its nature.
> the generic conduct of the offense must always present that
> high level of risk. That is what "by its nature" means.

Pierce, 278 F 3d at 301-02 (emphasis in original). Moreover, the
judge was "not persuaded by the majority's statistics," and
identified reasons to question the reliability of using reported
cases to determine how an offense was committed "most of the
time." "The majority's data speaks only to convictions under the
statute, not to the myriad of ways the statute can be violated"
-- ways, that is, that do not involve violence. Id. at 302. In
other words, a statute that can be violated nonviolently is not a
categorical crime of violence, regardless of the conduct present
in most reported cases.

In United States v. Vann. 620 F.3d 431 (4th Cir. 2010)
("Vann I"), issued one year after Petitioner filed his § 2255
motion, the Fourth Circuit again employed the "most cases"
analysis, referencing Pierce as it did so. Id. at 441. In holding
that a state offense was a violent felony under the ACCA, the
court based its decision in part on its "review of North Carolina
decisions applying the statute," which "reveal[ed] that a large
number of violations involve the use of horrific force." Id
(citing cases). The dissent, however, objected to this approach:

> The majority's resort to specific North Carolina cases in
> support of its contention that "a large number of...
> violations involve the use of horrific force," is
> unavailing. It is the bedrock principle of the categorical
> approach that only the elements of the offense -- rather
> than the factual circumstances of a specific violation --

19

can be considered.

Id. at 454 (citations omitted). It would be "unfair," the dissent explained, "to impose sentence enhancements simply because more heinous crimes often satisfy the elements" of a defendant's crime of conviction." Id.

Vann I was vacated and superseded by United States v. Vann. 660 F.3d 771 (4th Cir. 2011)(en banc). The en banc opinion held that the defendant's sentence could not be enhanced under the ACCA for a prior state conviction because the government could not prove that he had not been convicted of the less-serious, non-violent provision of the statute. While it did not purport to address the propriety of the "most cases" methodology used by the vacated opinion, Judge Niemeyer, the author of that opinion and of Pierce, disagreed with the conclusion that the less-serious provision of the state offense was non-violent. In doing so he relied on Pierce, wherein, he explained, "this court conducted an exhaustive statistical analysis" of reported cases involving the statute to find that in 98% of the cases the crime had been committed in a way that risked injury to the victim. Id. at 785. n. 7 (citing Pierce at 289). "Surely, a 98% exposure to risk of injury passes muster," the dissent wrote, to show that the offense was a violent felony. Id. In a concurring opinion, Judge King retorted that "[a]ll the sound and fury summoned forth by the dissent. spewing statistics...signifies nothing," since the statute was broad enough to cover non-violent conduct. Id. at 785.

Two years later the Fourth Circuit decided United States v

20

Aparicio-Soria. 721 F 3d 317, 325 (4th Cir 2013)("Aparicio-Soria I"). In describing the categorical approach, the court wrote that it

> requires an elements-based rather than a conduct-based methodology. The conduct underlying prior state court decisions, however, may provide probative evidence of how the law defines the elements of the offense in question.

Id. at 325 (emphasis supplied). The court then cited dozens of cases culled from the government's brief showing that "[e]very case, save one, demonstrates that the defendant acted in a manner involving violent force..." Id. at 325 and 326-27. The court found on that basis that the Maryland resisting arrest statute in question was a crime of violence under the force clause of the reentry guideline.

The dissent vigorously objected to this conclusion and the "dubious metric of counting opinions" by which it was reached. Id. at 334 n.8. The dissent decried the majority's "flawed numerosity thesis," id. at 336 n.12, as a "freewheeling analysis of underlying conduct in a smattering of reported cases." Id. at 332. It explained:

> [R]ecounting the actual conduct underlying some of the scores of resisting arrest cases in Maryland courts entirely disregards this Court's consistent adherence to the rule that, under the categorical approach, we look only to the statutory definition of the crime and the fact of conviction. The majority gives mere lip service to the principle that we are to engage in an elements-based inquiry, not a conduct-based one.

Id at 334-35. [5] Such an inquiry is "entirely unnecessary and

_____

[5] What the dissent describes as the court's "consistent adherence" to a purely elements-based approach, had emerged only in recent years. See, e.g., Hemingway, 734 F.3d 1084 (examining only elements of the offense); Carthorne, 726 F.3d 503 (4th Cir.

inappropriate..."Id. at 336.

Like Vann I, Aparicio-Soria I was vacated, and superseded by United States v. Aparicio-Soria, 740 F.3d 152 (4th Cir. 2014)(en banc). This time, the Fourth Circuit clearly and definitively retired the "dubious metric of counting opinions." The en banc court held that the Maryland statute did not qualify as a crime of violence because it could be committed with a degree of force less than that required to meet the definition of that term under the reentry guideline. In so finding, the court relied on a holding of Maryland's high court explicating the elements of the statute and resoundingly rejected the government's argument that the court should rely on its collection of reported cases purportedly showing that all applications of the statute involved violent force.

> Armed with this mountain of cases, the Government urges us to avoid exercising our "legal imagination" when analyzing the resisting arrest offense, and instead asks us to examine whether there is a "realistic probability," not a theoretical possibility, that [Maryland] would apply its statute to conduct that falls outside the realm of violent force.

Id. at 157. But "this case does not require legal imagination,

---

2013(same); United states v. Del Carmen Gomez, 690 F.3d 194 (4th Cir. 2012)(looking to MD cases to determine elements of offense, not to underlying conduct of those cases); Torres-Miguel, 701 F.3d 165 (4th Cir. 2012)(examining only elements of offense). The "most cases" methodology of Pierce and Aragon remained good law throughout this period because it was not overruled by an en banc court until 2014. See United States v. Rivers, 595 F.3d 558, 564 n.3 (4th Cir. 2010)("[A] panel of this Court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this Court. Only the Supreme Court or this Court sitting en banc can do that")(citations and internal quotation marks omitted). In any event, those cases post-dated Petitioner's § 2255 motion. And as shown below, district courts -- including this court -- were using Pierce's "most cases" methodology as late as 2010. Thus even if it can be argued that it fell into disuse by about 2012, it would have beenapplicable in 2009.

22

merely mundane research skills," said the court, since
Maryland's high court had held that the statute in question
could be violated with only "offensive physical contact," and
that degree of force was insufficient to qualify the offense as
a categorical crime of violence under the federal sentencing
regime. Id. The court explained that

> even with its raft of cases, the Government's argument
> misses the point...We don't need to hypothesize about
> whether there is a "realistic probability" that Maryland
> prosecutors will charge defendants engaged in non-violent
> physical contact with resisting arrest; we know that they
> can because the state's highest court has said so.

Id. at 157-58. Then, reflecting many of the concerns raised in
past concurring and dissenting opinions about the "most cases"
approach, the court then explained some of the reasons to doubt
the reliability of using surveys of the conduct in reported
cases to determine whether an offense is a categorical crime of
violence. But in the end, the court concluded, whatever the
reason for the frequency of cases involving violent conduct in
the state reporter,

> it does not really matter, because the "key" is "elements,
> not facts," and violent force is simply not an element of
> resisting arrest in Maryland. And that ends the inquiry.

Id. (citing Descamps, 133 S.Ct. at 2283).

Lest there be any doubt that with this holding the en banc
court foreclosed any further use of the "dubious metric of
counting opinions" as incompatible with the categorical approach,
the dissent, written by Judge Wilkinson and joined only by Judge
Niemeyer, explained the majority opinion's import:

> Not only do we refrain for good and sufficient reason from
> investigating the facts underlying defendants' specific
> predicate conviction, but we are now also barred from
> examining the actual conduct involved in the mine run of

23

state cases.

Id. at 162 (emphasis supplied). The impact of the en banc opinion, joined by all but two judges of the Fourth Circuit, cannot be stated any clearer.

While it may go without saying, it bears emphasizing that the fact that Aparicio-Soria dealt with the force clause of the reentry guideline, and that a state offense was at issue in that case, in no way limits its impact to that set of circumstances. The holding relates to a "bedrock principle of the categorical approach," as the dissent in Vann I put it, an approach which, as noted, applies to a variety of crime of violence provisions, including § 16(b) and § 924(c)(3)(B). See n.3, supra. Likewise, the rejected "most cases" analysis has been applied to a variety of such provisions -- again, including § 16(b). See Aragon, 983 F.2d at 1311-13 (applying "most cases" approach to § 16(b) and analyzing federal offense). Indeed, Aparicio-Soria II cited Descamps for its holding, and that case dealt with the ACCA's residual clause. The rational for prohibiting the "dubious metric of counting opinions" derives from the nature of the categorical approach itself, not from any particular crime of violence provision to which it may be applied, and certainly not from any particular offense analyzed under it.

So it would have been futile for Petitioner to bring his claim in his 2009 § 2255 petition because it would have failed the "most cases" test of Pierce, which was still good law at the time. And to drive this point home, a year and a half after Petitioner filed his § 2255 motion, a court of this district

24

applied the "most cases" test to a Virginia statute, assault and
battery on a police officer, to find that it was a crime of
violence under § 16(b). United States v. Romero, 2010 U.S. Dist.
LEXIS 118083 (E.D. Va. Nov. 1, 2010). Explaining its rationale,
the court wrote:

> Applying the above legal standard [i.e., Pierce's "most
> cases" test] to the offense at issue, it appears that a
> significant majority of the crimes prosecuted under the
> statute at issue actually involve the use of force as
> assaults on officers or other officials are likely the
> most common fact pattern that would support a charge under
> the statute at issue.

Id. (emphasis supplied). This is the same test that Petitioner's
claim would have faced had it been brought in a § 2255 motion
when that test was still good law, and as demonstrated above, it
would have failed that test because "a significant majority of
the crimes prosecuted under [the Neutrality Act] actually involve
the use of force." And as evidence of this test's tendency to
deliver the wrong result, three years after the Eastern District
decided Romero, the Fourth Circuit -- applying an elements-based
analysis, not the conduct-based "most cases" analysis -- held
that the very statute at issue in Romero was not a categorical
crime of violence under USSG § 4B1.2(a)(2).[6] Carthorne at 513-14.

In sum, following Petitioner's § 2255 motion, the law of
this circuit changed so as to open the door for his claim that,
by its elements, and irrespective of the conduct in reported
cases, the Neutrality Act is not a crime of violence and cannot

---

[6] While Carthorne dealt with § 4B1.2 and Romero dealt with §
16(b), the Supreme Court "has found that the definition of crime
of violence under § 16(b) is narrower that in USSG § 4B1.2."
Serafin at 1109 (citing Leocal at 10 n.7).

25

support a § 924(c) charge. Petitioner therefore meets the second Jones condition.

### 3. Petitioner cannot satisfy the gatekeeping provisions of § 2255.

The gatekeeping provision of § 2255 provides that a prisoner may not file a second or successive § 2255 motion unless the appeals court certifies that it is based on newly discovered evidence or on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Petitioner's claim here is based on a change in circuit law, not on a new rule of constitutional law announced by the Supreme Court, nor on newly discovered evidence. Therefore, he is barred from raising this claim in a second or successive § 2255 motion, rendering that section "inadequate or ineffective to test the legality of [his] detention." In re Jones, 226 F.3d at 333 (citing 28 U.S.C. § 2255(e)). Accordingly, Petitioner meets all three Jones conditions, and "may seek a writ of habeas corpus pursuant to § 2241." Id.

## V. Conclusion and Prayer for Relief

Demonstrably, the Neutrality Act may be be violated with noncombatant service on behalf of a foreign country's armed forces, that involves no substantial risk that force will be used in the performance of that service. It follows that that offense is not a categorical crime of violence under § 924(c), and that Petitioner's conviction on that count cannot stand. And since this claim would have failed the crime of violence test that remained good law until 2014, he could not have raised it in his

26

§ 2255 petition, and so may raise it now  § 2241.

    For these reasons, Petitioner prays that

    A.    This Court conduct a hearing and inquiry into the cause of Petitioner's detention; and

    B.    Following the hearing, Petitioner be ordered discharged from the detention and restraint described in this petition.

            Respectfully submitted,

Dated:   6/13/14

Randall Todd Royer
Reg. No. 46812-083
Federal Correctional Complex
P.O. Box 1000
Petersburg, VA   23804

## CERTIFICATE OF SERVICE

    I certify that on this 13th day of June, 2014, I caused the foregoing to be mailed to counsel for Respondent at the following address: United States Attorney's Office, Eastern District of Virginia; 2100 Jamieson Avenue; Alexandria, VA   22314.

Randall Todd Royer

## APPENDIX: Reported Neutrality Act Cases

United States v. Smith, 27 F. Cas. 1192 (Cir. Ct. D.N.Y., 1806)
(defendant charged with providing money and men for military
expedition against Spanish territory in S. America); Charge to
Grand Jury-Neutrality Laws, 30 F.Cas. 1017 (Cir. Ct., N.D.N.Y.
1866)(military expedition by group of men against Canada); United
States v. Hart, 74 F. 724 (Cir. Ct. S.D.N.Y. 1896)(group of 40-60
men sailed to Cuba to join insurrection); United States v.
O'Brien, 75 F. 900 (Cir. Ct. S.D.N.Y. 1896)(group of men sought
to engage Cuban army); United States v. Nunez, 82 F. 599 (Cir.
Ct. S.D.N.Y. 1896)(transportation of group of men to fight Cuban
army); Hart v. United States, 84 F. 799 (3d Cir. 1898)(ship
sailed for armed attack on Cuba); United States v. Burr, 25 F.
Cas. 201 (Ct. Ct. D. Va. 1807(def. led group of armed men in
march on Mexico); United States v. Quitman, 27 F. Cas. 680 (Cir.
Ct. D. Louisiana, 1854)(armed troops sent to free Cuba); United
States v. Ybanez, 53 F. 536 (Cir. Ct. W.D. Tex., 1892)(assistance
to group of armed men who crossed border, then rejoined battle
with Mexican army); Charge to Grand Jury-Neutrality Laws, 30 F.
Cas. 1023 (Cir. Ct. 1859)(armed troops sent to Nicaragua); De
Orozco v. United States, 237 F. 1008 (5th Cir. 1916)(Def. charged
with conspiring to take part in a military expedition against
Mexico); United States v. Workman, 28 F. Cas. 771 (D. Louis.
1807)(def. accused of planning military expedition against
Mexico); United States v. Hughes, 75 F. 267 (D.S.C. 1896)(30 men
sailed to Cuba to join revolution); United States v. The Laurada,
85 F. 760 (D. Del. 1898)(same case); United States v. Murphy, 84
F. 609 (D. Del. 1898)(same case); United States v. Pena, 69 F.

1

983 (D. Del. 1895)(same case); United States v. Rand, 17 F. 142
(E.D. Penn. 1883)(armed military expedition against Haiti);
United States v. O'Sullivan, 27 F. Cas. 380 (S.D.N.Y. 1851)
(military expedition , apparently involving outfitting ship and
hiring soldiers); United States v. Wiborg, 163 U.S. 632 (1896)
(military expedition against Cuba); Charge to Grand Jury, 30 F.
Cas. 1018 (Cir. Ct. D. Ohio 1838)(group involved in efforts to
invade Canada); Charge to Grand Jury, 30 F. Cas. 1021 (Cir. Ct.
D. Ohio 1851)(group participated in armed attack on Cuba); United
States v. Lumsden, 26 F. Cas. 1013 (Cir. Ct. D. Ohio 1856)(def's
charged with object of overthrowing British rule in Ireland);
Charge to Grand Jury, 30 F. Cas. 1020 (Cir. Ct. D. Ind. 1851)
(expedition against Cuba); United States v. Trumbell, 48 F. 99
(S.D. Calif. 1891)(armed rebellion against Chile -- charges
dismissed); United States v. Chakraberty, 244 F. 287 (S.D.N.Y.
1917)(Def's accused of arranging importation of arms to India to
foment rebellion against British rule); United States v. Sander,
241 F. 417 (S.D.N.Y. 1917)(def's sent a spy to United Kingdom);
United States v. Tauscher, 233  F. 597 (S.D.N.Y. 1916)(def's
plotted to blow up canal used by British navy); United States v.
Chhunn, 744 F.3d 1110 (9th Cir. 1914)(group carried out armed
attempt to overthrow Cambodian government); Gandara v. United
States, 33 F.2d 394 (9th 1929)(group of insurrectionists crossed
border with Mexico; defendant equipped them with arms so they
could return to battle); Jacobsen v. United States, 272 F. 399
(7th Cir. 1920)(group planned to send "armed hostile military
force" against British gov't in India); United States v. Ram

2

Chandra, 254 F. 635 (N.D. Calif. 1917)(no details given); United States v. Bopp, 230 F. 723 (N.D. Calif. 1916)(def's conspired to destroy railway tunnel in Canada); United States v. Leon, 441 F.2d 175 (5th Cir. 1971)(def's launched ariel bomb attack on Haiti); Casey v. United States, 413 F.2d 1303 (5th Cir. 1969) (conspiracy to lead military expedition against Haiti and export weapons); Ahrens v. Rojas, 292 F.2d 406 (5th Cir. 1961)(Rojas indicted for military expedition against Cuba; no details); In re Grand Jury Proceedings, 567 F.2d 281 (5th Cir. 1978)(investigation of apparently armed expedition against Cuba); United States v. Black, 685 F.2d 132 (5th Cir. 1982)(group of mercenaries organized to overthrow gov't of Granada); United States v. Ramirez, 765 F.2d 438 (5th Cir. 1985)(scheme to overthrow gov't of Haiti); United States v. Terrell, 731 F. Supp. 473 (S.D. Flor. 1989)(def. accused of aiding Contras; indictment dismissed); United States v. Jack, 2010 U.S. Dist. LEXIS 121209 (N.D. Calif. Nov. 12, 2010)(men indicted for plotting overthrow of gov't of Laos).

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL CASE NO. 03-296-A |
| v. | ) | |
| | ) | The Honorable Leonie M. Brinkema |
| RANDALL TODD ROYER, *et al.* | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT ROYER'S MOTION TO DISMISS
## COUNTS 1 (IN PART), 2, 4, 5, 7, 10 (IN PART), 11, 18, 23, and 24–27
## OF THE SUPERSEDING INDICTMENT

Defendant Randall Todd Royer, pursuant to Rule 12(b) of the Federal Rules of Criminal

Procedure, by counsel, respectfully submits this Memorandum in Support of his Motion to

Dismiss objects 2-4 of count 1 and counts 2, 4, 5, 7, 10 (in part), 11 18, 23, and 24–27.

### INTRODUCTION

In a remarkable display of overreaching and mischarging, the government's 32-count

superseding indictment against Mr. Royer and his alleged co-conspirators is directly at odds with

the facts alleged. The government, in a smorgasbord attempt to find criminal sanctions for Mr.

Royer's conduct, has thrown open the United States Code books and charged him with fourteen

serious crimes - - most carrying severe penalties - - without careful regard to what the statutes

actually prohibit. In doing so, it has dusted off several antiquated, rarely used statutes, including

the Neutrality Act and the statute prohibiting seditious conspiracy, that have no application to the

conduct of Mr. Royer.

### C. The Lawful Possession of a Firearm for Target Practice Cannot, as a Matter of Law, Further Criminal Activity

Mr. Royer is charged in count 23 with possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). The allegations in the indictment, however, are insufficient to sustain this charge. "924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward" a crime of violence. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). Courts may evaluate several factors to determine whether the possession of a firearm "furthers" a crime of violence in each case, including: the type of activity conducted at the time of possession, whether the weapon is stolen, and whether the possession itself was legal. *Id.* For example, an individual does not violate the law by owning a firearm for the purpose of target shooting or hunting. *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000). In the superseding indictment, the government has made no allegations indicating Mr. Royer, at the time he was cited for possession, had been engaged in an activity related to any other conduct alleged in the indictment, or that the firearm Mr. Royer allegedly possessed was stolen. As a result, the government has not alleged that Mr. Royer's possession furthered any purported crime of violence, and count 23 should be stricken from the superseding indictment.

### D. The Neutrality Act Is Not a Crime of Violence

In the superseding indictment, Mr. Royer is charged in count 18 with using a firearm during, and in relation to, a crime of violence. See Superseding Indictment at Count 18. As discussed in Section III.A above, the Neutrality Act offense charged in count 7 is the only possible charge that can serve as predicate crime of violence for count 18. The Neutrality Act is not a crime of violence and therefore count 18 should be dismissed.

A crime of violence under 18 U.S.C. § 924(c) is defined as

44

An offense that is a felony and –

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Exhaustive research has not revealed a single case in which a court has addressed the issue of whether a § 960 violation is a crime of violence. Turning to the statute, the elements of a § 960 offense are that 1) within the United States; 2) a military expedition or enterprise be organized, or the means for such an expedition or enterprise be provided; 3) to be carried on against a country with which the United States is at peace. *See* 18 U.S.C. § 960. Clearly, none of the elements involve, or even contemplate, the use, attempted use or threatened use of physical force. Further, as discussed above in Section III.B.1 above, the offense is complete once the military expedition or enterprise is organized or the provision for such an expedition or enterprise is made. *See, e.g., Wiborg*, 163 U.S. at 649; *Hart*, 78 F. at 869; *Murphy*, 84 F. at 613.

Because a violation of the Neutrality Act does not involve an element of physical force and no substantial risk of such force during the commission of the offense, it cannot be considered as a crime of violence under § 924(c). Therefore, count 7 and count 10 cannot be used as predicate offense for any of the firearms charges. To the extent that counts 11, 18, and 23-27 rely on counts 7 and 10 as predicate offenses, they must be dismissed. Further, because count 7 is the only offense that can serve as a predicate crime of violence for count 18, count 18 should be dismissed.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEC 23 ..

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA,      )
                               )
        v.                     )      Criminal No. 03-296-A
                               )
RANDALL TODD ROYER, et al.,    )
                               )
        Defendants.            )

## MEMORANDUM OPINION

Before the Court are Motions to Dismiss filed by defendants
Royer and Khan, cross-adopted by Khan and Royer, and adopted by
co-defendants Al-Hamdi, Chapman, H. Abdur-Raheem, and C. Abdur-
Raheem.  Also before the Court is defendant Khan's Motion to
Dismiss Counts Three Through Five, adopted by Royer, and
defendant Chapman's Motion to Dismiss Counts 19 and 24-27.  We
dispense with oral argument because the facts and legal
contentions are adequately presented in the materials before us
and argument would not aid the decisional process.  For the
reasons discussed below, the Motions to Dismiss will be DENIED.

A motion to dismiss challenges the legal sufficiency of the
indictment; it is not a device for summary trial of the evidence.
Therefore, for purposes of the motions to dismiss, we assume the
truth of the factual allegations of the indictment.  See Fed. R.
Crim. P. 12(b)(2); United States v. Jensen, 93 F.3d 667, 669 (9th
Cir. 1996); Costello v. United States, 350 U.S. 359, 363-64
(1956).  Accordingly, denial of motions to dismiss the indictment

remedy defeats defendants' motion to dismiss on the basis of vagueness.

Defendants also move to dismiss Counts 18, 19, 22, and 24-27, for which the alleged violations of 18 U.S.C. § 924(c) occurred overseas, on the ground that § 924(c) does not apply extraterritorially. Specifically, defendants argue that an ancillary statute, like § 924(c), may only apply extraterritorially if the underlying substantive offense to which the firearm is connected itself applies to extraterritorial conduct. See United States v. Usama bin Laden, 92 F.Supp.2d 189, 192 (S.D.N.Y. 2000). Defendants also dispute whether some of the substantive and conspiracy counts in the indictment qualify as crimes of violence, as defined by 18 U.S.C. § 924(c)(3).

Whether the underlying crimes of violence can be established by the Government cannot be determined at this point. Once all the evidence has been developed at trial, we will reconsider whether the Government has established the necessary predicate offense. Accordingly, the motions to dismiss Count 1, Object 3 and Counts 11-14 and 17-32 will be denied.

## VIII. Counts 3 and 4 (Conspiracies to Provide Material Support to Al-Qaeda, Contribute Services to the Taliban)

Defendants Khan and Royer move to dismiss Count 3 (Conspiracy to Provide Material Support to Al-Qaeda) and Count 4 (Conspiracy to Contribute Services to the Taliban), because the indictment contains no specific factual allegations relating to

23

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 1:03cr296 (LMB) |
| | ) 1:09cv300 (LMB) |
| | ) |
| RANDALL TODD ROYER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is Randall Todd Royer's ("Royer" or
"movant") Motion to Vacate, Set Aside, or Correct Sentence By a
Person in Federal Custody pursuant to 28 U.S.C. § 2255 ["Motion
to Vacate"]. In the motion filed by counsel, Royer argues that
his conviction and sentence for Count One of the two-count
criminal information to which he pled guilty are
unconstitutional and void as a matter of law based on newly
discovered evidence that establishes his actual innocence.[1] See
Mot. to Vacate at 1-2. To develop the evidence to support his
claims, Royer requests an evidentiary hearing. Id. at 29. In
opposition, the Government argues that Royer's Motion to Vacate
is time-barred, as well as foreclosed by Royer's guilty plea and

---

[1] Royer states that he is not challenging his conviction or
sentence as to Count Two of the criminal information nor seeking
to withdraw his guilty plea, which he affirms was made
knowingly, intelligently, and voluntarily. See Mot. to Vacate at
1.

peace, in violation of the Neutrality Act.[7] The thrust of Royer's argument is that Khan's affidavit establishes that engaging in military actions in Kashmir against Indian forces was never any of the co-conspirators' intent and that without this necessary element, Royer is innocent of aiding and abetting the conspiracy. Royer maintains that the affidavit is new evidence that triggered the limitations period for his § 2255 motion and that, in light of that affidavit, his conviction as to Count One cannot be sustained.

Royer attempts to justify the late filing of his Motion to Vacate by arguing that Khan had refused to talk with him, first at the Alexandria Adult Detention Center and then at Terra Haute-FCI, where they were both imprisoned following their respective convictions, because Royer "had pled guilty, was

---

[7] The parties devoted several pages of their memoranda disputing the issue of whether Royer's plea was limited to the Neutrality Act object of the conspiracy or whether it also included object two, knowingly engaging in armed conflict with the United States. Compare Mot. to Vacate at 4-5 and Royer Reply at 18 with Answer at 13-16. The record of the plea colloquy—specifically the statements of defense counsel that Royer "expressly does not acknowledge any participation in Object 2 . . . and has never had an intent . . . to hurt Americans or American soldiers"—clearly established that the defendant limited his admission of guilt to aiding and abetting violations of the Neutrality Act. The Court therefore does not accept the Government's position that Royer's general acceptance of responsibility for his conduct constitutes an admission as to the second object. See App. 140-41 (plea colloquy); see also Royer Reply at 18.

14

# *Report Prisoner Data (Middle Name)*

| *ID#* | *Last* | *First* | *Middle* | *FileDate* | *Judge* | *RecDate* | *Ofc* | *Year* | *cv* | *Num* | *Action* | *threeStrike* |
|-------|--------|---------|----------|------------|---------|-----------|-------|--------|------|-------|----------|---------------|
| 46812083 | Royer | Randall | Todd | 02/09/2010 | 130 Judge Brinkema | 02/04/2010 | 1 | 10 | cv | 146 | 28:1331bv | |
| 46812083 | Royer | Randall | Todd | 06/24/2014 | 130 Judge Brinkema | 06/23/2014 | | | cv | | 28:2241 | |

Randall Todd Royer
Reg No. 46812-083
Federal Correctional Complex
P.O. Box 1000
Petersburg, VA 23804

June 12, 2014

RECEIVED
MAILROOM

JUN 1 8 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Clerk of the Court
401 Courthouse Square
2nd Floor
Alexandria, VA 22314-5704

RE: Notice of Related Case
    Filing Fee

Dear Sir or Madam:

Enclosed please find a Petition for Writ of Habeas Corpus. Although I am incarcerated near the Richmond Division, I am mailing it to the Alexandria Division because it concerns my criminal case, United States v. Royer, Cr. No. 03-296-A, which was filed in this Division and assigned to Judge Brinkema.

Additionally, I have caused to be sent under separate cover a check for the $5.00 filing fee for this petition. It should arrive shortly after this petition. If it has not arrived within a few days of receiving this petition, I trust that you will inform me of this fact.

Thank you for your assistance.

Sincerely,

Randall Todd Royer

enclosure


RECEIVED

JUN 23 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

Randall Todd Royer
#46812-083
Federal Correctional Complex
P. O. Box 1000
Petersburg, VA 23804





RECEIVED
JUN 23 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

⇔46812-083⇔
Court Clerk
401 Courthouse SQ
2nd Floor
Alexandria, VA 22314-5704
United States

LEGAL