IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RANDALL TODD ROYER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civ. No. 1:14cv801 |
| ) | Crim. No. 1:03cr296 |
| ERIC D. WILSON, ) | |
| ) | |
| Respondent. ) | |

FILED
MAILROOM
AUG 2 5 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE
TO PETITION FOR WRIT OF HABEAS CORPUS

The government has filed an opposition to the Petition for writ of habeas corpus, asserting that this court lacks jurisdiction over the petition under the savings clause of § 2255(e), and that Petitioner cannot overcome procedural default. As explained below, however, this court has jurisdiction because Petitioner meets all three conditions set forth in In re Jones, and it may consider his claim on the merits because he can show both actual innocence and cause and prejudice to relieve his default.

I. Jurisdiction

As a threshold matter, Petitioner must address the government's contention that "jurisdictional issues are likely moot" in this case due to Petitioner's supposed inability to overcome his procedural default, and therefore the court may deny the petition by "assum[ing] without deciding" that it has subject-matter jurisdiction over the petition. Response at 7 n.4.

The government's suggested approach is clearly wrong. "Subject matter jurisdiction cannot be conferred by the parties,

nor can a defect in subject matter jurisdiction be waived by the parties." Brickwood Contrs., Inc. v. Datanet Eng'g, Inc., 369 F.3d 2004). The court's subject matter jurisdiction over this matter flows from the savings clause of § 2255(e). See Rice v. Rivera, 617 F.3d 802, 806-07 (4th Cir. 2010)(finding that district court lacked jurisdiction over petition because petitioner failed to satisfy Jones conditions); Williams v. Warden, 713 F.3d 1332, 1337-1340 (11th Cir. 2013)(citing Rice to conclude that "the savings clause is jurisdictional in nature").

Procedural default, on the other hand, "is not jurisdictional in nature, but is an affirmative defense..." Bryant v. Warden, 738 F.3d 1253, 1261 (11th Cir. 2014). See also Fay v. Noia, 372 U.S. 391, 438 (1963)(holding that "the jurisdiction of the federal courts is not affected by procedural defaults incurred by the applicant"); Yeatts v. Angelone, 166 F.3d 255, 260-61 (4th Cir. 1998)(procedural default is an affirmative defense). Given that "[w]ithout jurisdiction the court cannot proceed in any cause," U.S. Steel Co. v. Citizens for Better Env., 523 U.S. 83, 94 (1998), this court must first assure itself of its jurisdiction over this petition before addressing the government's affirmative defense. See Smith v. Homer, 846 F.2d 1521, 1542 (D.C. Cir. 1988)(Silberman, J., concurring)("Without subject matter jurisdiction we would be without power or authority to consider the government's affirmative defense of waiver"). Accordingly, this court cannot avoid ruling on whether Petitioner has met the three Jones factors.

2

A.  The First <u>Jones</u> Condition

The first <u>Jones</u> condition requires that, "at the time of conviction, settled law of this circuit or of the Supreme Court established the legality of the conviction." <u>Jones</u> at 330. The government urges an interpretation of this condition as requiring that the higher courts had specifically considered and rejected the precise claim advanced in a § 2241 petition. Response at 8-9. The government reads into <u>Jones</u> a requirement that is not there. By its terms, all this condition requires is that the challenge Petitioner now raises would have been rejected under settled law at the time of his conviction. <u>See</u> <u>Rice</u> at 807 (stating that <u>Jones</u> permits prisoners "to take advantage of a change in the <u>applicable</u> law"). It is obvious, even self-evident, that caselaw need not specifically address a given claim for it be applicable to, or even foreclose, that claim. <u>See</u>, <u>e.g.</u>, <u>Sly v. DFCU</u>, 443 F. Supp. 2d 885, 893 (E.D. Mich. 2006)("[A]lthough there is no Supreme Court decision directly on point, the decisions discussed above implicitly foreclose Plaintiff's assertions of federal jurisdiction").

An example of this in the habeas context is <u>Brown v. Caraway</u>, 719 F.3d 583 (7th Cir. 2013), wherein a § 2241 petitioner argued that circuit precedent prior to <u>Begay</u> holding that the offense of "reckless endangerment" was a crime of violence, foreclosed his claim that his third-degree arson offense was not a crime of violence because it has a mens rea of recklessness. The Seventh Circuit agreed:

> [T]his precedent suggests that if [the petitioner] had made the argument he currently advances -- that the

3

> "recklessness" mens rea in the Delaware criminal statute rendered it ineligible for treatment as a career-offender predicate -- he clearly would have lost under [that precedent]. It therefore follows that pre-Begay binding precedent foreclosed [the petitioner's] argument that Arson in the Third Degree is not a "crime of violence," as its mens rea is mere recklessness.

Id. at 595. Hence, the appeals court's pre-Begay holding that a particular offense with a mens rea of recklessness was a crime of violence, foreclosed a claim that an entirely different offense also having a mens rea of recklessness was not a crime of violence. In other words, precedent explicitly treating one claim implicitly foreclosed another, on the basis of a common -- and, as it turned out, erroneous -- underlying principle.

Likewise, the holding of cases like Pierce and Aragon -- that application of the categorical approach to crimes that may be committed both violently and non-violently requires a determination of whether "most" reported cases involved violent conduct -- would have perforce foreclosed Petitioner's claim that the Neutrality Act is not a crime of violence, since "most" reported Neutrality Act cases involved potentially violent conduct. In this very literal and practical sense, then, the settled law of this circuit concerning how to apply the categorical approach established the legality of Petitioner's § 924(c) conviction predicated on a Neutrality Act violation, despite the fact that the Neutrality Act may be committed non-violently.

In sum, it is irrelevant to the first Jones condition whether the Fourth Circuit has ever specifically passed on the Neutrality Act's qualification as a crime of violence.[1] It is sufficient to meet this standard that Petitioner's claim was

4

effectively and practically foreclosed by the binding precedent of Pierce and Aragon; indeed, the government does not even argue that those cases would not have foreclosed this claim. Accordingly, the court should find that Petitioner has met the first Jones condition.

B.  The Second Jones Condition

The second Jones condition requires a habeas petitioner to show that "subsequent to [his] direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which [he] was convicted is deemed not to be criminal." Jones at 334. The goverment argues that Aparicio-Soria (1) did not change the law as it existed at the time of Petitioner's conviction; (2) does not apply to § 924(c)(3)'s residual clause; and (3) does not render non-criminal the conduct of which Petitioner was convicted. The government is wrong on all counts.

1.  Aparicio-Soria changed the law as it existed at the time of Petitioner's conviction

As the Petition makes abundantly clear, Petitioner's claim is founded upon the holding of Aparicio-Soria that the categorical approach forbids courts from examining the underlying conduct in reported cases to determine whether an offense is a crime of violence. Aparicio-Soria at 157-58; Petition at 18-26. This holding implicitly abrogates binding Fourth Circuit precedent holding that, when an offense may be

---

[1] In fact, the government is mistaken in claiming that the Fourth Circuit "did not opine on the issue" of whether the Neutrality Act is a crime of violence. Response at 9. See United States v. Khan, 461 F.3d 477, 489-90 (4th Cir. 2006)("This evidence was sufficient to support the district court's conclusion that Chapman possessed a firearm in furtherance of a violation of the Neutrality Act, a crime of violence").

5

committed both violently and non-violently, it is a crime of violence when "most" of the conduct in reported cases involving the statute was violent. See, e.g., Pierce, 278 F.3d at 289; Aragon, 938 F.2d at 1315.

This evolution in Fourth Circuit law was based on the teaching of the Supreme Court that in analyzing an offense under the categorical approach, "the 'key' is 'elements, not facts.'" Aparicio-Soria at 158 (quoting Descamps, 137 S.Ct. at 2283). The en banc majority therefore concluded that looking to the facts of prior reported cases "misses the point of the categorical approach." Id. As the dissent explained, this holding marked a significant change in the law: while courts of this circuit had always "refrained for good and sufficient reason from investigating the facts underlying defendant's specific predicate conviction," after Aparicio-Soria, they "are now also barred from examining the actual conduct involved in the mine run of [reported] cases." Id. at 162. This change in the law, the dissent explained, carries with it "the consequence that large numbers of force and residual clause offenses are deemed...non-violent." Id. at 159.

In light of the foregoing, it is obvious that the government's argument that Aparicio-Soria did not change the law must fail. First, it misconstrues Petitioner's argument to be that "the test for determining whether an offense is a 'crime of violence' is now a 'categorical' test rather than a 'modified categorical' test." Response at 10. But as explained above, that is not Petitioner's argument at all; the distinction between the

6

categorical and modified categorical approaches does not directly affect this case. Rather, this case has to do with <u>Aparicio-Soria</u>'s holding that analysis of the conduct in prior reported cases is incompatible with the categorical approach.

Thus while it is true that the government argued in its 2003 opposition to Petitioner's pre-trial motions that the Neutrality Act should be analyzed under the categorical approach, it is also entirely irrelevant. That is because, as repeated <u>ad nauseam</u> in the Petition and this Reply, the law in the Fourth Circuit in 2003 was that the categorical approach included a survey of the underlying conduct in prior reported cases when the offense could be committed non-violently. Indeed, as the government notes in its Response, in its opposition to Petitioner's pre-trial motions it cited <u>Aragon</u>, in which the Fourth Circuit determined that an offense was a crime of violence by looking to the underlying conduct in "reported South Carolina cases involving this offense and [in] cases from other states concerning analagous firearm offenses..." <u>Aragon</u> at 135. It is precisely this sort of inquiry that <u>Aparicio-Soria</u> forbids, so the government cannot plausibly claim that the applicable law today is the same as it was in 2003.[2]

---

[2] There is, however, a sense in which the change in law as to use of the modified categorical approach is relevant to this case. In <u>United States v. Lindh</u>, 212 F. Supp. 2d 541 (E.D.Va. 2002), cited by the government in its opposition to Petitioner's pre-trial motions, the court held -- based on the law at the time -- that when an offense may be committed non-violently, "it is permissible to examine the Indictment's allegations for whatever light they may shed on the violent nature of the crimes alleged." <u>Id.</u> at 581. Later developments in Supreme Court and circuit law, like <u>Shepard</u> and <u>Descamps</u>, clarified that this was only allowed with divisible statutes.

7

2. <u>Aparicio-Soria</u> applies to § 924(c)(3)'s residual clause

The government grants that, because <u>Aparicio-Soria</u> addressed the force clause of U.S.S.G. § 2L1.2, that case's holdings apply to the force clauses of other crime-of-violence provisions, such as § 924(c)(3)(A). Response at 13. It argues, however, that "<u>Aparicio-Soria</u> has no bearing on Royer's issue" because the Neutrality Act is analyzed under § 924(c)(3)(B), the residual clause, and per the government, <u>Aparicio-Soria</u> applies only to force clauses. <u>Id.</u> at 12. As justification for limiting that case to force clauses, the government points out that "cases cited by the government relying on the 'residual clause' [of the ACCA and career offender guideline] were deemed irrelevant to the <u>Aparicio-Soria</u> court's <u>en banc</u> decision." Response at 13. While perhaps superficially appealing, this argument evaporates under scrutiny.

It is true that the <u>Aparicio-Soria</u> court rejected the government's argument that the holdings of ACCA and career-offender guideline residual clauses dictated the result that Maryland resisting arrest was a crime of violence under the reentry guideline's force clause. <u>Aparicio-Soria</u> at 156-57. But the fact that residual clause cases did not control in <u>Aparicio-Soria</u> does not imply that that case's holdings have no application to residual clause cases. <u>Aparicio-Soria</u> contained several holdings. The holding that Petitioner relies on did not come in the context of the government's argument based on the residual clause, but rather, in response to its "argument...that there is no way to be convicted of resisting arrest in Maryland without the use of force," "cit[ing] thirty-eight published

8

opinions by the Maryland appellate courts to support its claim, all of which arguably involved the defendant's use of violent force." Id. at 157.

In holding that this sort of analysis was incompatible with the categorical approach's strict reliance on "elements, not facts," the Aparicio-Soria court set forth the law with respect to the categorical approach itself, not the application of the categorical approach to force clauses as against residual clauses. The holding that courts may not consider the underlying conduct in prior reported cases does not turn on anything unique to force clauses. Rather, it flows from "the bedrock principle of the categorical approach," Vann I, 620 F.3d at 454 (King, J., dissenting), i.e., the principle that only "elements, not facts" may be considered in determining whether an offense is categorically a crime of violence.

Indeed, the dissent in Aparicio-Soria expressly recognized that the majority's opinion has the "consequence that large numbers of force and residual clause offenses are deemed...non-violent." Aparicio-Soria at 159. With respect, the opinion of Judges Wilkinson and Niemeyer that this holding applies to residual clauses carries more weight than the government's opinion that it does not. Moreover, and fatal to the government's argument, the Fourth Circuit has already applied Aparicio-Soria to the residual clause of the ACCA, specifically noting the applicability of its holding to that statute. United States v. Mungro, 2014 U.S. App. LEXIS 10850 and n.2 (4th Cir. 2014).

Hence, the government's argument that Aparicio-Soria does

9

not apply to residual clauses cannot prevail when the holding Petitioner relies on addresses a bedrock principle of the categorical approach, when the dissent in that case expressly recognized that that holding applies to residual clauses, and when the Fourth Circuit is now actually applying that holding to residual clauses. And that holding applies, therefore, to § 924(c)(3)(B).

3. **Aparicio-Soria renders non-criminal the conduct of which Petitioner was convicted**

The government asserts that Petitioner cannot meet the second Jones factor because, "[e]ven under the newest Fourth Circuit cases," the Neutrality Act is still a crime of violence. Response at 13. "As a result," it argues, the change in the law "is not one that makes the conduct to which Royer admitted in his guilty plea anything other than criminal." Id. at 15.

The government is wrong: after Aparicio-Soria, using a firearm during and in relation to a violation of the Neutrality Act does not violate § 924(c). The reason for this is simple. Under the categorical approach, an offense is not a crime of violence if "the full range of conduct covered by the...statute does not fall within" the definition of crime of violence. United States v. Torres-Miguel, 701 F.3d 165, 171 (4th Cir. 2012). The full range of conduct covered by the Neutrality Act is not covered by § 924(c)(3)(B) because, as the government candidly admits, espionage is non-violent conduct, Response at 14, and, as a federal district court has held, espionage violates the Neutrality Act. United States v. Sander, 241 F. 417 (S.D.N.Y. 1917). The government's concession that espionage is non-violent

10

conduct and its failure to argue that Sander was wrongly decided dispose of this question, because if espionage is non-violent conduct and it violates the Neutrality Act, the inexorable conclusion is that non-violent conduct violates the Neutrality Act. And after Aparicio-Soria, if non-violent conduct violates the Neutrality Act, then that offense is categorically not a crime of violence, even if "most" reported cases involved violent conduct.

Petitioner stresses that he is not urging upon the court an anamolous or "pro-defendant" result. Rather, this result flows from Congress's decision to draft the Neutrality Act so broadly as to criminalize both violent and non-violent conduct. See Wiborg v. United States, 163 U.S. 632, 650 (1896)(stating that "the word 'enterprise' was employed to give a slightly wider scope to the statute"). A statute may be broad enough to criminalize both violent and non-violent conduct, or it may be narrow enough to subject violators to § 924(c) penalties, but under the post-Aparicio-Soria understanding of the categorical approach, a statute cannot do both.

The dissent in Aparicio-Soria may have been right in its view that, as a result of the en banc majority's opinion, "large numbers of force and residual clause offenses are deemed, despite all evidence to the contrary, non-violent," Aparicio-Soria at 159, but until the Supreme Court or a future en banc Fourth Circuit says otherwise, that opinion is the law, with the result that the Neutrality Act is one of those "large numbers of... residual clause offenses that are deemed...nonviolent."

11

In sum, <u>Aparicio-Soria</u> changed the law as it existed at the time of Petitioner's conviction; its holding applies to the residual clause of § 924(c)(3)(B), and the result of that application is that the Neutrality Act is not a crime of violence because it may be committed with conduct that the government concedes is non-violent. Accordingly, the court should find that Petitioner has met the second <u>Jones</u> condition.

C. The Third <u>Jones</u> Condition

The third <u>Jones</u> condition requires Petitioner to show that he cannot meet the gatekeeping provisions of § 2255 because the new rule he relies on is not one of constitutional law. <u>Jones</u> at 334. The government makes no argument as to this condition and thus concedes the issue. And in fact, the rule Petitioner relies on is not one of constitutional law, so he cannot meet the requirements for a second or subsequent § 2255 motion, so he meets the third <u>Jones</u> condition as well.

In conclusion, Petitioner has met all three <u>Jones</u> conditions and qualifies to proceed via the § 2255(e) savings clause. The court should find that it has jurisdiction over the petition.

II. <u>Procedural Default</u>

The government asserts the affirmative defense of procedural default. Response at 15-17. Petitioner concedes that his claim is defaulted but, as will be shown, he overcomes default because he can show actual innocence as well as cause and prejudice.

A. Actual Innocence

Actual innocence permits a habeas petitioner "to avoid a

12

procedural bar to the consideration of the merits" of his claim. Schlup v. Delo, 513 U.S. 298, 326-27 (1995). Petitioner has demonstrated that he is actually innocent of Count One of the information. However, as the government correctly points out, when the prosecution has "forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Bousley v. United States, 523 U.S. 614, 623-24 (1998).[3]

The pertinent question, then, is whether the government has forgone any more serious charges. Bousley did not articulate a standard for gauging the seriousness of charges, and courts have arrived at different means of doing so. This court did not come to a conclusion on this issue in its 2012 opinion concerning Petitioner's § 2255 motion. The government has not taken any position on the issue in this action and has therefore waived any argument concerning it.

Accordingly, this court writes on a blank slate, and Petitioner submits that it should adopt the position of other courts of this circuit and use the statutory maximum as the

---

[3] In its 2009 opposition to Petitioner's § 2255 motion, the government argued that Petitioner also had to show actual innocence of any equally serious charges. In this action, however the government has abandoned that argument and now agrees that to obtain relief, Petitioner need only show actual innocence of any "more serious counts." Response at 15 (emphasis added). That argument should thus be deemed waived -- and in any event, it is dubious. See Brewington v. United States, 2012 U.S. Dist. LEXIS 161225 (E.D.N.C. Nov. 8, 2012)(rejecting notion that actual innocence must extend to equally serious charges and noting that "no court in the Fourth Circuit has interpreted Bousley in the manner urged by the government here").

13

measure of "seriousness" of the charges. See, e.g., Elbert v. United States, 2014 U.S. Dist. LEXIS 46245 (E.D.N.C. April 3, 2014); Brewington v. United States, 2012 U.S. Dist. LEXIS 161225 (E.D.N.C. Nov. 8, 2012). See also United States v. Scruggs, 714 F.3d 258, 265-66 (5th Cir. 2013)(using statutory maximum for the forgone and pleaded counts to determine petitioner's "maximum exposure" before and after plea).

The § 924(c) count to which petitioner pleaded guilty carried a statutory maximum sentence of life in prison (as did the § 844(h) count to which he pleaded guilty). The § 924(c) counts that were dropped pursuant to the plea bargain likewise carried statutory maximum sentences of life. Petitioner's maximum exposure both before and after the plea was life in prison. By the standard adopted by the Eastern District of North Carolina, then, the forgone counts were equally serious, but not more serious, and thus Petitioner does not need to demonstrate actual innocence of those counts.

In sum, because Petitioner has shown actual innocence of the § 924(c) count to which he pleaded guilty, and because he does not need to demonstrate actual innocence of any forgone charges, Petitioner has met the requirements of Bousley and the court should therefore excuse his procedural default and proceed to the merits of the petition.[4]

---

[4] Because the government has not raised it -- and hence, as noted, has waived it -- Petitioner will not fully brief the issue of actual innocence of more serious charges where the measure of seriousness is something other than the statutory maximum. Were it necessary, however, he could do so by showing that no count of

14

B.  Cause and Prejudice

Alternatively, the court may excuse Petitioner's procedural default because he can show cause and prejudice. "A procedural default is excusable under the cause and prejudice standard when

---

the indictment could serve as a predicate offense for the forgone § 924(c) charges.
    Specifically, Count One of the superseding indictment cannot serve as a predicate because Object One, the Neutrality Act, is not a crime of violence, and Object Two -- as the court held in ruling on Masoud Khan's § 2255 motion -- is multiplicious with Count Two, which count is discussed further below.
    As to Count Three, § 2339B, Petitioner would have been found not guilty for the same reason as Khan: fighting on behalf of the Taliban would have benefitted Al Qaeda but "does not fit the statutory definition of 'material support or resources.'" United States v. Khan, 309 F. Supp. 2d 789, 821 (E.D. Va. 2004).
    Count Four is not a crime of violence because one may supply goods to territory controlled by the Taliban without employing physical force.
    Count Five is not a crime of violence because § 2339A may be violated by "conceal[ing]...an escape from the commission" of an enumerated offense. This language creates accessory-after-the-fact liability, see U.S.S.G. § 2X3.1 (providing accessory-after-the-fact enhancement for violators of § 2339A's "concealment of an escape" language), and acting as an accessory after the fact to a crime of violence is not itself a crime of violence. United States v. Innie, 7 F.3d 840, 85-53 (9th Cir. 1993). Moreover, § 2339A was amended to include conspiracy, the offense charged in Count Five, only after Petitioner allegedly aided and abetted the § 924(c) violations, so ex post facto considerations bar it from serving as a 924(c) predicate as to Petitioner.
    Counts Seven and Ten, the substantive Neutrality Act counts, are not crimes of violence.
    This leaves only Count Two, seditious conspiracy, as a possible predicate for the § 924(c) counts. Petitioner has never admitted any facts supporting a conviction on this count. See Mem. Op. of July 23, 2012 (finding that "Royer's general acceptance of responsibility for his conduct [does not] constitute an admission as to the second object" of Count One of the indictment). Rather, compelling evidence exists in the record of Petitioner's innocence as to this count, including trial testimony by government witness Nabil Garbieh (attached to Petitioner's Reply to the government's opposition to his § 2255 motion) and the Khan affidavit, showing that Petitioner did not know of or intend to assist violence against U.S. soldiers, but rather intended to assist Kashmiri or Chechen insurgents.
    In the event that the court finds that something other than the statutory maximum should be used to gauge "seriousness" of the charges, Petitioner requests an evidentiary hearing so he can show his innocence of Count Two.

15

the petitioner demonstrates (1) that some objective factor external to the defense caused the default, and (2) that the error worked to his actual and substantial disadvantage, infecting the entire [proceeding] with errors of constitutional dimensions." Wolfe v. Clarke, 691 F.3d 410, 420 (4th Cir. 2012) (citations and quotation marks omitted).

1. Petitioner can show cause

The cause Petitioner asserts for defaulting his claim is that the applicable law changed subsequent to his conviction and time for direct appeal. Showing cause for procedural default based on a subsequent change in the law requires showing that "the legal basis for the claim was not reasonably available when the matter should have been raised." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). However, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623.

The Fourth Circuit has explained that the reason the petitioner in Bousley was unable to demonstrate cause to excuse his default, despite the fact that the Bailey holding "changed the relevant legal landscape," was that his "claim was not novel. The Court reached this conclusion because other defendants had previously challenged their § 924(c)(1) conviction" on the same ground raised by the Bousley petitioner. United States v. Sanders, 247 F.3d 139, 144-45 (4th Cir. 2001).

In the instant case, however, it does not appear from Petitioner's research that any defendant ever challenged, on

16

direct appeal or in the trial court, the Fourth Circuit's "most cases" approach to analyzing cases that may be committed non-violently. Rather, as best Petitioner can tell, this issue was raised in <u>Aparicio-Soria</u>, <u>Vann I</u>, <u>Pierce</u>, <u>Aragon</u>, and the other cases cited in the Petition, by the government as a means of demonstrating that the offenses in question were crimes of violence. Petitioner can find no sign that the defense ever questioned the premise behind the "most cases" approach. Hence, this is not a case where "defense counsel have perceived and litigated that claim," rendering the change in the law insufficient cause for excusing default. <u>Engle v. Isaac</u>, 456 U.S. 107, 134 (1982).

Accordingly, Petitioner submits that this claim truly was not "reasonable available" on direct appeal, constituting cause for the default that was "external to the defense" and relieving his default. <u>Cf.</u> <u>Whiteside v. United States</u>, 748 F.3d 541 (4th Cir. 2014)(holding, in statute of limitations context, that its erroneous pre-<u>Simmons</u> precedents were "external to the defense"); <u>Dutton v. Brown</u>, 812 F.2d 593, 596 (10th Cir. 1987)(cause shown for default because trial counsel could not have known that subsequent change in law would reveal prosecutor's remarks were unconstitutional).

2. Petitioner can show prejudice

To establish prejudice sufficient to excuse procedural default, a petitioner must show that the error complained of "worked to his actual disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986).

17

In the instant case, the court will recall that Petitioner was preparing for trial, contacting his witnesses in Pakistan and Bosnia, and so on. His decision to plead guilty was triggered by the denial of his pre-trial motions, as indicated by his change of plea only three weeks after their denial. With the Neutrality Act and other counts of the indictment able to serve as predicate offenses for the § 924(c) counts, Petitioner chose to forgo his constitutional right to go to trial.

On the other hand, had Petitioner been able to establish, as he now can, that only the seditious conspiracy count could have served as a § 924(c) predicate, he would have exercised his right to go to trial and test the government's proof as to the remaining counts. See n.5, supra. In other words, the cause for Petitioner's procedural default -- the Fourth Circuit's erroneous understanding of the categorical approach -- worked to his actual prejudice because it caused him to forgo a valuable constitutional right. See Hill v. Lockhart, 474 U.S. 52, 59 (1985)(defining the "prejudice" showing in the Strickland context as a showing that petitioner "would not have pleaded guilty and would instead have insisted on going to trial").

Accordingly, Petitioner has shown both cause and prejudice and his procedural default should be excused.

III. Conclusion

This court may rule on the merits of Petitioner's claim for relief because it has subject-matter jurisdiction over the petition and Petitioner has overcome his procedural default. The Neutrality Act is not a crime of violence and thus cannot support his

18

conviction on Count One of the information. The court should therefore vacate that conviction and order Respondent to release Petitioner from custody.

Respectfully submitted,

Dated: August 20, 2014

_____
Randall Todd Royer

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 20, 2014

_____
Randall Todd Royer

## CERTIFICATE OF SERVICE

I certify that on August 21, 2014, I will cause the foregoing to be mailed to counsel for the Respondent.

_____
Randall Todd Royer

19

LEGAL MAIL

Randall Todd Royer
#46812-083
Federal Correctional Complex
Petersburg Virginia
P.O. Box 1000
Petersburg, VA 23804

⇔46812-083⇔
Court Clerk
401 Courthouse SQ
2nd Floor
Alexandria, VA 22314-5704
United States

U.S. MARSHALS
INSPECTED



Freedom FOREVER

Liberty FOREVER