IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| RANDALL TODD ROYER | ) | |
| | ) | Criminal No.  1:03cr296 |
| v. | ) | |
| | ) | |
| ERIC D. WILSON | ) | |

RESPONSE TO SUPPLEMENTAL REPLY

On October 26, 2015, Randall Royer filed his reply to the government's opposition to his petition for a writ of habeas corpus.  On October 29, 2015, he filed a "supplemental reply" based on the Ninth Circuit's decision in *Dimaya v. Lynch*, 2015 WL 6123546 (9th Cir. October 19, 2015).  The Ninth Circuit's panel decision in *Dimaya* is wrong, and should not be followed.  As Judge Callaghan wrote in her dissent to the majority opinion, "I fear that we have again ventured where no court has gone before and that the Supreme Court will have to intervene to return us to our proper orbit."[1]

As a preliminary matter, the Court should recognize that *Dimaya* is an opinion that, by its very terms, purported to do nothing more than resolve an immigration appeal.  Indeed, in that opinion, the Ninth Circuit explicitly disclaimed any impact of its decision outside of the immigration context.  In specific, it stated that "[o]ur decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence."  *Dimaya v. Lynch*, 2015 WL 6123546 , at n.17.  Of course, Royer would have this Court rely on *Dimaya* to do

---

[1] Undersigned counsel understands that it is likely that, even before the Supreme Court might get involved, the United States will seek rehearing of the case before the Ninth Circuit *en banc*.

exactly that. By the very statements of the Ninth Circuit in *Dimaya,* however, that would be a "bridge too far."

Even with respect to the explicitly limited ruling that it did make, the *Dimaya* panel majority simply failed to recognize the significance of the differences between the ACCA and the definition of a "crime of violence" in 18 U.S.C. § 924(c)(3)(B). As the Fourth Circuit recently emphasized, under § 924(c)(3)(B) - - and unlike under the ACCA's residual clause - - "the relevant inquiry is not whether there is a risk of *any* person using force in any way tangentially related to an ongoing offense, but rather whether there is a substantial risk of the *defendant* doing so" in the course of committing the offense. *United States v. Fuertes*, --F.3d--, 2015 WL 4910113, at *9 (4th Cir. Aug. 18, 2015) (emphasis in original). Thus, that a defendant's "conduct" may lead to an "injury" (as specified in the ACCA's residual clause) does not suffice to make such conduct a "crime of violence" for purposes of Section 924(c)(3)(B).[2]

To qualify as a "crime of violence" under this framework, the offense must proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) the risk of force must arise during the course of committing (3) an active, violent offense. *Leocal v. Ashcroft*, 543 U.S. 1, 10-11 (2004).

In applying Section 924(c)(3)(B), "every set of conceivable facts" covered by the offense being evaluated does not have to present a serious risk of injury for it to qualify as a crime of violence. *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014). "It is sufficient if 'the

---

[2] *Fuertes* held that the trafficking by force, fraud, or coercion under 18 U.S.C. § 1591(a) is not a crime of violence under § 924(c)(3)(B) because, by its very terms, it can be committed through fraudulent means rather than by force; a defendant who uses fraudulent means will not by his conduct create a substantial risk that physical force will be used. *Id*. at *8-9.

2

conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.'" *Id.*

Under § 924(c)(3)(B), the "ordinary case" is defined by the elements of the offense, and a court does not, as in ACCA, consider risks that might arise after the physical acts constituting the crime have been completed. Instead, a court asks whether the offense elements would "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 11.[3] The analysis is non-speculative and consistent with *Johnson*. If the risk of the use of force is naturally present in the elements of the offense, then it qualifies as a "crime of violence" under § 924(c)(3)(B) (and as an "aggravated felony" under § 16(b)). In light of this analysis, the far-ranging inquiry required by the ACCA that was determined in *Johnson* to be unconstitutionally vague is inapplicable to Section 924(c)(3)(B).

The more narrow requirement to determine whether an offense "naturally" involves a risk of the use of force during its commission is neither vague or speculative. The phrase "by its nature" in § 924(c)(3)(B) simply triggers application of the categorical approach, which looks at offense elements. *United States v. Aragon*, 983 F.2d 1306, 1312 (4th Cir. 1993). Furthermore, the Supreme Court has long examined the "nature" of predicate offenses in applying enhancements. *See, e.g., Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). As for the degree

---

[3] Inasmuch as *Johnson* did not mention *Leocal* - - much less overrule it - - *Leocal* remains controlling. *See, e.g., United States v. Danielczyk*, 683 F.3d 611, 615 (4th Cir. 2012) (lower courts should not presume the Supreme Court has overruled one of its cases by implication; courts must follow case law that directly controls unless clearly overruled by subsequent Supreme Court case).

of risk necessary, courts have made clear that the need for a "substantial" risk is not vague. *Aragon*, 983 F.2d at 1313-15 (applying "substantial risk" standard).

Royer relies on *Dimaya* for the proposition that § 924(c)(3)(B) is unconstitutionally vague because it requires courts to evaluate the "ordinary case" of an offense. *Dimaya,* however, did not somehow overrule the Fourth Circuit's decision in *Avila* regarding use of the "ordinary case" analysis. "After all, "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *United States v. Collins,* 415 F.3d 304 (4th Cir. 2004).[4]

Similarly, *Dimaya* did not somehow overrule the Fourth Circuit's decision in *Aragon,* applying the "substantial risk" standard. Of course, in *Johnson*, the Supreme Court noted that it was not overruling decisions applying the "substantial risk" standard outside of the ACCA, either. *Johnson*, 135 S.Ct. at 2561. Accordingly - - and unless and until the Fourth Circuit or the Supreme Court overrules the existing precedent in this circuit - - Section 924(c)(3)(B) remains valid.

The *Dimaya* majority's conclusion is not only contrary to the Fourth Circuit's reasoning in *Avila,* but it also is a recipe for chaos: after all, judges routinely determine the typical way a crime is committed and apply that analysis to reach legal conclusions. After all, Section 924(c)(3)(B) contains language identical to many other federal statutes. *See, e.g.,* 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute); 18 U.S.C. § 521(d)(3)(C) (enhanced sentence for

---

[4] And, as noted above, *Johnson* did not overrule *Leocal*.

4

criminal gang members); 18 U.S. C. § 3663(c)(1)(A) (mandatory restitution); 18 U.S.C. § 5032 (juvenile transfer statute).[5]

For example, pursuant to 18 U.S.C. § 3553(a)(6), sentencing judges analyze where a defendant's conduct falls on the spectrum of ways of committing the offense - - and hence how a defendant's case compares to the "ordinary case." After all, sentences should be determined in a way that will avoid disparities between defendants with similar records who have been convicted of engaging in similar conduct; as a result, judges must consider whether a defendant should receive the same sentence or a different sentence as other defendants who committed the same offense, depending on the different circumstances of each's conduct (including the relative risk of force being used in their particular conduct) compared to the relative risk of force being used in the ordinary case. In short, general standards and assessments of the ordinary case are indispensable.

In essence, *Dimaya* fails to recognize that courts at virtually every stage of a criminal proceeding routinely evaluate how each defendant's particular offense differs (if at all) from the "ordinary case." If the requirement set forth in *Avila,* 770 F.3d at 1107, for judges to weigh whether "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another," makes a statute unconstitutionally vague, then even Section 3553(a)(6) cannot withstand constitutional challenge. Of course, the converse is also

---

[5] As noted in our in our initial pleading opposing Royer's petition, Royer's argument that *Johnson* renders § 924(c)(3)(B) unconstitutionally vague contradicts the Supreme Court's statement in *Johnson* itself, that striking the ACCA's residual clause would have little effect on other risk-based statutes. 135 S.Ct. at 2561. As specified above, Royer's argument would have this Court void a handful of regularly-used statutes as unconstitutionally vague.

true: if *Avila*'s requirement for judges to analyze how a defendant's case compares to the "ordinary case" for purposes of sentencing is not unconstitutionally vague, then the requirement for judges to analyze the risk that force will be used in a particular offense for purposes of determining whether it offense is a "crime of violence" is not, either.

On October 22, 2015, Judge Jackson denied a vagueness challenge to Section 924(c)(3)(B) based on an argument identical to the one made here by Royer. *United States v. Hunter*, 2015 WL 6443084 (E.D. Va. October 22, 2015) ("Defendant argues that the residual clause of Section 924(c) is unconstitutionally vague after the United States Supreme Court's decision in *Johnson v. United States*, ⎯⎯ U.S. ⎯⎯,135 S.Ct. 2551 (2015)"). Judge Jackson first noted that such a vagueness challenge is disfavored. Ultimately, he concluded that he could not find that the Supreme Court in *Johnson* intended to invalidate the residual clause of § 924(c):

> The Court first states for the record what has been clear in this Circuit and across our federal courts for time immemorial: facial challenges are disfavored. . . . A facial challenge "to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." . . . Our reticence to hear and decide facial challenges flows logically from the "fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. . . .
>
> The Court cannot find on the record before it or on the law of this Circuit that the Supreme Court in *Johnson* intend to invalidate the residual clause of § 924(c). The residual clause of the ACCA had faced significantly more confusion in the lower courts, was a much broader clause than § 924(c), and required courts to analyze conduct outside of that conduct required for the charged offense.

*Hunter*, 2015 WL 6443084 (internal citations omitted).

In rejecting the vagueness challenge based on *Johnson*, Judge Jackson explicitly recognized that the Ninth Circuit in *Dimaya* had reached the opposite conclusion with respect to 18 U.S.C. § 16(b):

> That decision, however instructive it may be, is not binding on this Court. And while the Court is familiar with similar cases currently pending before the Fourth Circuit and other courts of this District, there is nothing in the current law of this Circuit that permits the Court to provide the relief Defendant now seeks.

*Hunter*, 2015 WL 6443084. *Accord United States v. Prickett,* 2015 WL 5884904 (W.D. Ark. October 8, 2015) (denying a defendant's motion based on *Johnson* to withdraw a guilty plea to a violation of Section 924(c)(3)(B)). This Court should reach the same conclusions that Judge Jackson did in *Hunter*.

That Royer's argument must be rejected is buttressed by the Supreme Court's dismissal in *Johnson* of the Government's stated concern that a finding that the ACCA residual clause was unconstitutionally vague would place into constitutional doubt other criminal statutes that use terms such as "substantial risk." *Johnson*, 135 S. Ct. at 2561. Specifically, the *Johnson* Court found that there was "[n]ot at all" a risk that statutes other than the ACCA residual clause would be affected, because "[a]lmost none" of the statutes the Government cited to in voicing its concern link a phrase such as "substantial risk" to a confusing list of examples (as required by the ACCA). *Id.*

In *Johnson*, the Supreme Court noted that almost all of those other statutes require gauging the riskiness of conduct in which an individual engages on a particular occasion, but were not placed at constitutional risk. *Id.* The Supreme Court noted that, "[a]s a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; the law is full of instances where a man's fate

7

depends on his estimating rightly . . . some matter of degree." *Id*. (internal quotations and citations omitted). That is exactly the nature of § 924(c)(3)(B). As a result, those statutes - - particularly including Section 924(c)(3)(B) - - were not placed at constitutional risk.

In short, the *Dimaya* majority did precisely what the Supreme Court in *Johnson* said that courts should not do: it seized upon the phrase "substantial risk" to invalidate a different statute merely because that different statute used that same phrase. The Supreme Court wrote:

> The Government and the dissent next point out that dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt. *Not at all.*

*Johnson*, 135 S. Ct. at 2561 (emphasis added). As Judge Callaghan wrote in her dissent to the *Dimaya* decision, "[t]he Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope."

Finally, we note that, in his plea agreement, Royer admitted that he discharged a firearm in furtherance of a crime of violence. The crime of violence that he admitted that he furthered by using a firearm - - the mounting of a military expedition against a foreign nation - - is clearly a crime of violence. Inasmuch as he admitted furthering a crime that obviously is a crime of violence, he cannot avoid his guilty plea on the grounds that the law might be vague with respect to someone else's theoretical conduct. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"). Regardless of whether Section

924(c)(3)(B) might be vague "as applied" to someone else's conduct, it was not vague with respect to his own.[6]

## Conclusion

For the above reasons, as well as the reasons set forth in our initial opposition memorandum, Royer's petition should be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

_____/s_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

---

[6] At Paragraph 15 of his plea agreement, Royer agreed that, if he withdraws from his plea agreement, then he cannot raise a statute of limitations defense to charges that were timely at the time he entered that agreement. Further, he agreed that any prosecution following his withdrawal from his plea agreement properly could be based on statements that he made before or after entering that agreement, and that he waived any right to suppress any of those statements on any legal basis. There is no allegation that his entry into his plea agreement was other than knowing and voluntary. As a result, if he successfully withdraws his guilty plea now, he can be prosecuted again for the charges in the Indictment that were dropped, as well as additional charges based on conduct that he admitted in his Statement of Facts and in grand jury testimony.

9

CERTIFICATE OF SERVICE

I certify that on November 18, 2015, I will cause to be delivered by first class mail a copy of the attached RESPONSE TO SUPPLEMENTARY REPLY to:

>Randall Todd Royer
>Reg. No. 46812-083
>Federal Correctional Complex
>P.O Box 1000
>Petersburg, VA  23804

>_____/s_____
>Gordon D. Kromberg
>Assistant United States Attorney
>Virginia Bar No. 33676
>Assistant United States Attorney
>Attorney for the United States
>2100 Jamieson Avenue
>Alexandria, VA  22314
>(703) 299-3700
>(703) 837.8242 (fax)
>gordon.kromberg@usdoj.gov